IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARA ELIZABETH RITZER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. 13-1036 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge

## **OPINION**

Pending before the Court is Plaintiff's Motion for Judgment on the Pleadings[1] and Defendant's Motion for Summary Judgment. (ECF Nos. 9 and 13). Both parties have filed Briefs in Support of their Motions. (ECF Nos. 10, 14 and 15). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting in part and denying in part Plaintiff's Motion for Summary Judgment (ECF No. 9) and denying Defendant's Motion for Summary Judgment. (ECF No. 13).

## **I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to the Social Security Act ("Act"). According to Plaintiff, she filed an initial SSI application on June 24, 2008, alleging that she became disabled on October 22, 2007. (ECF No. 6-7, p. 2). That application was denied on October 16, 2008, and Plaintiff did not appeal. (ECF

---

[1] I believe Plaintiff mislabeled his Motion for Judgment on the Pleadings. Plaintiff's Motion and Brief rely on evidence in the administrative record. As such, Plaintiff's Motion is more aptly titled as a Motion for Summary Judgment. Therefore, I am construing Plaintiff's Motion for Judgment on the Pleadings as a Motion for Summary Judgment.

1

No. 6-4, pp. 2-3). She filed her second SSI application on January 20, 2009, alleging she had been disabled since October 22, 2007. (ECF Nos. 6-7, p. 5). Administrative Law Judge ("ALJ"), James Bukes, held two hearings on August 22, 2011, and December 16, 2011. (ECF No. 6-2, pp. 51-67 and 6-3, pp. 2-37). On December 28, 2011, the ALJ found that Plaintiff was not disabled under the Act. (ECF No. 6-2, pp. 13-23). After exhausting all administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 9 and 13). The issues are now ripe for review.

## II. LEGAL ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review decisions to deny a complainant's application for benefits under the Act. This court, however, does not have jurisdiction to review "abuses of agency discretion in refusing to reopen claims for social security benefits." *Califano v. Sanders*, 430 U.S. 99, 107–08 (1977); *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987) ("A decision of the Secretary declining to reopen a claim is not judicially reviewable."), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). Nevertheless, this Court may examine the administrative record to determine whether a *de facto* reopening occurred. *Coup*, 834 F.2d at 317. "A reopening ... will be found 'where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits ....' " *Id. (quoting Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985)).

When this court has jurisdiction to review a decision to deny an application for benefits under the Act, the standard of review is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical

3

evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### A. **Whether the ALJ *de facto* Reopened Plaintiff's Prior Application**[2]

Plaintiff argues that the ALJ *de facto* reopened her prior application. (ECF No. 10, pp. 12-14). Judicial review of final decisions on claims arising under the Social Security Act is limited by Sections 205(g) and (h) of the Act. 42 U.S.C. §§ 405(g) & (h). "It is well settled that federal courts lack jurisdiction under § 205 to review the Commissioner's discretionary decision to decline to reopen a prior application or to deny a subsequent application on *res judicata* grounds." *Tobak v. Apfel*, 195 F.3d 183 (1999) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977) and *Stauffer v. Califano*, 693 F.2d 306, 307 (3d Cir. 1982)). Although a federal court has the ability to determine its own jurisdiction by examining whether *res judicata* has been properly applied, *id.* (citing *McGowen v. Harris*, 666 F.2d 60, 66 (4th Cir. 1981)), the decision not to reopen a prior claim is a discretionary decision afforded to the Commissioner and not subject to judicial review. *Sanders*, 430 U.S. at 108. There exist only two exceptions to this limit on judicial review: (1) where a *de facto* reopening has occurred, *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987), abrogated on other grounds by *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), and (2) where a claimant challenges the Commissioner's decision on constitutional grounds. *Sanders*, 430 U.S. at 108. In this case, Plaintiff raises the first exception arguing that ALJ *de facto* reopened

---

[2] A determination may be reopened within 12 months of the date of the notice of the initial determination for any reason. 20 C.F.R. §416.144(a). This case falls within the 12 month time frame.

Plaintiff's June 28, 2008 application. (ECF No. 10, pp. 12-14). Defendant does not respond to this argument. *See,* ECF No. 14.

"A reopening, and thus a waiver of any claim of administrative *res judicata,* will be found 'where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits . . . ." *Id.* (citing *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985)); *Kaszer v. Massanari*, 40 Fed. Appx. 686 (3d Cir. 2002). Thus, I must examine whether a *de facto* reopening of Plaintiff's first application has occurred.

Here, the ALJ did not explicitly address the earlier, unfavorable SSI decision anywhere in his decision regarding the later, pending application. (ECF No. 6-2, pp. 13-23). Admittedly, the ALJ does discuss evidence prior to the later application date. *Id.* I note, however, that Plaintiff uses the same onset date of October 22, 2007 for both applications. (ECF No. 6-7, pp. 2, 5). As a result, the ALJ's review of such evidence does not demonstrate a reopening of the earlier case.

Moreover, the language used by the ALJ throughout his opinion leads me to the conclusion that he did not reopen Plaintiff's prior application. *See,* ECF No. 6-2, pp. 13-23. For example, the ALJ very specifically makes findings with regard to the January 20, 2009, application. He stated that Plaintiff has not been under a disability "since January 20, 2009, the date the application was filed." (ECF No. 6-2, pp. 13, 22). He further stated that "[b]ased on the application for supplemental security income filed on January 20, 2009, the claimant is not disabled…." *Id.*, p. 23. Thus, I find the ALJ narrowed the time period under consideration by using the date of the second application.

Therefore, based on the above, I find that the ALJ did not reopen Plaintiff's prior application.

**B.     The Assessment of Plaintiff's Mental Disability**

Plaintiff argues that the ALJ improperly assessed her mental disability.[3]  (ECF No. 10, pp. 14-18).   Specifically, Plaintiff argues that the ALJ erred in affording only "some weight" to Dr. Jasper Kang, Plaintiff's treating psychiatrist from March 2010 through April 2011. *Id.* Additionally, Plaintiff argues the ALJ erred in discrediting her treating primary care physician, Dr. Diana Lemley, M.D.   (ECF No. 10, pp. 16-18).   After a review of the record, I agree.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating,

---

[3] Again, Defendant fails to respond to this argument.   *See,* ECF No. 14.

> non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r of Social Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

### 1.    Dr. Kang

In this case, the ALJ gave only "some weight" to Dr. Kang. (ECF No. 6-2, p. 19). In particular, the ALJ stated that he did not give Dr. Kang controlling weight because Dr. Kang's assessment that Plaintiff had "serious limitations" and his opinion that Plaintiff cannot perform sustained work were contradicted by him giving Plaintiff a GAF score of 58 and by his indication that Plaintiff's symptoms had shown improvement with treatment. *Id.* Plaintiff takes issue with these reasons.

Dr. Kang had treatment notes for Plaintiff from March 2, 2010 through April 23, 2011. (ECF No. 6-32, pp. 3-7). On December 10, 2011, Dr. Kang filled out a Mental Residual Functional Capacity Questionnaire on Plaintiff. (ECF No. 6-33, pp. 25-28). Therein, Dr. Kang assessed Plaintiff to be seriously limited (or worse) in 19 out of 25 categories. *Id.* Dr. Kang then stated the reasons for this assessment: "Easily distracted, low frustration tolerance, irritable and anxious/depressed." (ECF No. 6-33, p. 26-27). He further indicated that her IQ or reduced intellectual functioning is related to [her] stroke post AV replacement. Please refer to those records for details." *Id* at p. 27. Additionally, Dr. Kang indicated that neither alcohol nor substance abuse contribute to any of Plaintiff's indicated limitations. *Id.* at p. 28.

To discredit these findings and explanations, as well as Dr. Kang's treatment notes, the ALJ singles out Dr. Kang's GAF assessment of Plaintiff at 58. GAF scores are not endorsed by

the Social Security Administration because the scores do not have a direct correlation to the disability requirements and standards of the Act. *See,* 65 Fed. Reg. 50746, at 50764-65 (2000). Moreover, GAF scores are arrived at by the clinician based on his or her assessment of a patient's self-reporting. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). Here, the ALJ found Plaintiff to be less credible; thus, making Plaintiff's GAF score questionable at best. Plaintiff's work related abilities and limitations are what are central to the issues in this case. Thus, I find the ALJ erred in relying the GAF score to completely discredit a treating psychiatrist's notes and the questionnaire that contained more specific descriptions of Plaintiff's work related abilities and limitations with explanation from the psychiatrist.

The other reason proffered by the ALJ for discrediting Dr. Kang's assessment of Plaintiff having "serious limitations" is that Plaintiff's "symptoms had shown improvement with treatment." (ECF No. 6-2, p. 19). For support, the ALJ cites to page 2 of Exhibit 34F. *Id.* Upon review of this page, I find the ALJ misconstrues what Dr. Kang wrote. The question is "3. Treatment and response: showed some response to treatment with perhaps a 30% decrease in symptoms when last seen on 4/23/11." (ECF No. 6-33, p. 25). This response does not necessarily mean that Plaintiff's work related abilities and limitations improved. It very well could mean that in her improved state she still had "serious limitations." As Dr. Kang later explained in support of his ratings of Plaintiff, she is easily distracted, has a low frustration tolerance, and is irritable and anxious / depressed. *Id.* at pp. 26-27. Consequently, I find the ALJ erred in discrediting Dr. Kang's notes and questionnaire based on a comment that Plaintiff showed improvement with treatment. Thus, remand on this basis is warranted.

    **2.    Dr. Lemley**

Plaintiff also argues the ALJ erred in discrediting her treating primary care physician, Dr. Diana Lemley, M.D. (ECF No. 10, pp. 16-18). After Plaintiff stopped seeing Dr. Kang, Plaintiff

began seeing her primary care physician, Dr. Lemley, for her mental health treatment. Dr. Lemley prescribed her mental health medication. (ECF No. 6-32, p. 51). On December 8, 2011, Dr. Lemley completed a residual functional capacity questionnaire. (ECF No. 6-33, pp. 19-23). Therein, Dr. Lemley opined that emotional factors contributed to Plaintiff's symptoms and identified the psychological conditions as depression and anxiety. *Id.* at p. 1638. She indicated that Plaintiff's symptoms were severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks explaining that she was unable to concentrate since her stroke. *Id.* As a result, Dr. Lemley found Plaintiff to be incapable of even low stress jobs. *Id.* The ALJ gave "little weight" to the assessment of Dr. Lemley because Dr. Lemley is not a mental health specialist. (ECF No. 6-2, pp. 19, 21). To that end, the ALJ gave "greater weight" to Dr. Kang's opinion that Plaintiff is doing better, with a GAF of 58. *Id.* at 19. As noted above, I found said interpretation of Dr. Kang's opinion to be in error. Consequently, the ALJ's opinion regarding Dr. Lemley cannot stand.[4] Thus, remand on this basis is warranted as

---

[4] I note, for remand purposes, that the ALJ made several incorrect statements. First, the ALJ said that although Plaintiff was taking "Prozac and Klonopin for reported anxiety and depression,…[she] was getting these prescriptions from her primary care physician and (sic) had not followed-up with a psychiatrist as required (Exhibit 13F, p. 15)." (ECF No. 6-2, p. 19). Exhibit 13F does not state that follow-up was required. (ECF No. 6-29, p. 40). Rather, Exhibit 13F states in the history of illness section that Plaintiff "has not seen the psychiatrist. She says she lost the psychiatrist's number." *Id.* Thus, there was no "requirement" that Plaintiff follow-up with a psychiatrist, as the ALJ claimed.

Furthermore, the ALJ stated that "Dr. Kang's treatment of the claimant stopped in April 2011 (Exhibit 30F, p. 6), with the claimant testifying at her December 2011, hearing that Dr. Kang called her at that time and told her he was discharging her from treatment because he would not take ***her*** behavior anymore (Testimony)." (ECF No. 6-2, p. 19, emphasis added). A review of Plaintiff's testimony reveals that Plaintiff's boyfriend was also seeing Dr. Kang and Plaintiff actually testified that she believed that it was her boyfriend's behavior, not her behavior, that ended her relationship with Dr. Kang. (ECF No. 6-3, p. 8).

Additionally, the ALJ states that Plaintiff "undergoes no mental health specialist treatment presently…." (ECF No. 6-2, p. 20). This is not a completely correct statement. Plaintiff testified that she is seeing "a lady at Allegheny General Hospital and she wouldn't do nothing for me unless she got Dr. Kang's record. Q. Oh, so you might be seeing her? A. Yes." (ECF No. 6-3, p. 8). An ALJ has the duty to fully develop the record to make a determination of disability. *Ventura v. Shalala,* 55 F.3d 900, 902 (3d Cir. 1995). The ALJ in this case did not seek to find out the name of this doctor or if Plaintiff followed up with her prior to rendering his

9

well.

C. **The Assessment of Plaintiff's Physical Limitations**

Plaintiff next argues that the ALJ improperly assessed her physical limitations. (ECF No. 10, pp. 18-19). Specifically, Plaintiff argues the ALJ erred in failing to explain why he did not incorporate two notable physical restrictions found by Dr. Lemley in her residual functional capacity questionnaire. *Id.* Again, Defendant fails to respond to this argument.[5] *See,* ECF No. 14. After a review of the record, I agree.

Dr. Lemley opined that during an 8 hour work day Plaintiff would need to walk every 30 minutes for 10 minutes each time. (ECF No. 6-33, p. 22). She also opined that, on average, Plaintiff's impairments would cause her to be absent from work more than four days per month. (ECF No. 6-31, p. 60). While the ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, he must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of SS,* 529 F.3d 198, 203-04 (3d Cir. 2008)).

In this case, the ALJ gave little weight to the mental assessments by Dr. Lemley, as discussed above, but he did not discuss the weight he gave to her physical assessments. *See,* ECF No. 6-2. While it appears as though the ALJ gave great weight to some of Dr. Lemley's

---

opinion, despite Plaintiff's counsel indicating that he put an order in for the documents. (ECF No. 6-3, p. 29). The ALJ issued his opinion less than two weeks later without the documents in the record. On remand, the ALJ should attempt to seek this information.

[5] The only true argument addressed by Defendant (that Plaintiff was not fully credible) was not an issue raised by Plaintiff. (ECF No. 14, pp. 12-14; No. 15, p. 1). As a result, there is no need to address the issue of Plaintiff's credibility. With that said, however, I do feel compelled to make one comment. In referencing Plaintiff's credibility, the ALJ states that Plaintiff's credibility "is further undermined by… the fact that, despite her allegations of disability, she was healthy enough to be pregnant…." ECF No. 6-2, p. 21. The ability to become pregnant has no bearing in this case on whether Plaintiff had a disability. Just because one is pregnant does not mean that she is not suffering from an impairment or she does not have limitations (mental, physical or both). Consequently, her ability, as a woman, to become pregnant is irrelevant and should have no negative impact on Plaintiff's credibility. Therefore, on remand, the ALJ should consider Plaintiff's credibility without considering the same.

other physical limitations in determining Plaintiff's residual functional capacity, he did not mention or explain his decision for rejecting or failing to include the two limitations listed above or how they factored into his decision of Plaintiff's work-related abilities and limitations. (ECF No. 6-2, 17-21). "Although the ALJ 'may properly accept some parts of the medical evidence and reject other parts ... (s)he must consider all of the evidence and give some reason for discounting the evidence (s)he rejects.'" *See Lanza v. Astrue,* No. 08-301, 2009 WL 1147911, at *7 (W.D. Pa. April 28, 2009), *quoting Colon v. Barnhart,* 424 F.Supp.2d 805, 812 (E.D. Pa 2006). "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett v. Comm'r of SS,* 220 F.3d 112, 121-22 (3d Cir. 2000)*, quoting Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981). The failure to discuss this probative and relevant medical evidence prohibits me from conducting a proper and meaningful review. Therefore, I find the ALJ erred in this regard. Consequently, remand is warranted on this basis.

In sum, remand, consistent with this opinion, is warranted. An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARA ELIZABETH RITZER,            )
                                  )
        Plaintiff,            )
                                  )
   -vs-                           )   Civil Action No. 13-1036
                                  )
CAROLYN W. COLVIN,                )
COMMISSIONER OF SOCIAL SECURITY,  )
                                  )
        Defendant.            )

AMBROSE, Senior District Judge

## ORDER OF COURT

THEREFORE, this 5th day of May, 2014, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 9) is granted in part and denied in part and Defendant's Motion for Summary Judgment (Docket No. 13) is denied.

It is further ordered that the decision of the Commissioner of Social Security is hereby vacated and the case is remanded for further proceedings consistent with the foregoing opinion.

              BY THE COURT:

              s/ Donetta W. Ambrose
              Donetta W. Ambrose
              United States Senior District Judge